Charles F. Connolly (*pro hac vice motion forthcoming*)
Aditya G. Nagarajan
AKIN GUMP STRAUSS HAUER
 & FELD LLP
1333 New Hampshire Avenue N.W.
Washington, DC 20036
(202) 887-4000

James P. Chou
AKIN GUMP STRAUSS HAUER
 & FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LRGP, LLC and SLRA INC., <br><br> Plaintiffs, <br><br>v. <br><br>CPP INVESTMENT BOARD REAL ESTATE HOLDINGS, INC., GOTHIC CORPORATION, INTERNATIONAL BANK OF RECONSTRUCTION AND DEVELOPMENT AS TRUSTEE FOR THE STAFF RETIREMENT PLAN AND TRUST AND THE RETIRED STAFF BENEFITS PLAN AND TRUST, LIBERTY INSURANCE CORPORATION, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and EMPLOYERS INSURANCE COMPANY OF WAUSAU, <br><br> Defendants, <br> and <br><br>LIQUID REALTY PARTNERS III, L.P., LIQUID REALTY PARTNERS III-A, L.P., and ARC (GP1) Ltd. <br><br> Proposed Intervenor-Defendants. | Civil Action No. 14-cv-6937-RJS |

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENORS' MOTION
TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

## TABLE OF CONTENTS

                                                     **Page**

**PRELIMINARY STATEMENT** .................................................................................................1
**RELEVANT BACKGROUND**..................................................................................................3
    The Funds............................................................................................................................3
    LRGP's Improper Withdrawal of the Additional Fees........................................................4
    LRGP is Removed and Replaced as General Partner .........................................................5
**ARGUMENT**...............................................................................................................................7
A.    Intervention as a Matter of Right........................................................................................7
    1.    Timeliness ................................................................................................................7
    2.    Interest in Litigation Which May Be Injured Without Intervention ........................8
    3.    Inadequate Representation by Other Defendants...................................................10
B.    Alternatively, The Funds Should Be Allowed to Permissively Intervene.........................11
**CONCLUSION** .........................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Atr-Kim Eng Fin. Corp. v. Aaraneta et al.*,
No. 489-N, 2006 WL 4782272 (Del. Chan. Dec. 21, 2006) ........................................................9

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001) ........................................................................................................8

*Buxbaum v. Deutsche Bank AG*,
216 F.R.D. 72 (S.D.N.Y. 2003) ..................................................................................................7

*Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*,
No. 06-cv-2875, 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007) ...............................................7, 8

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..........................................................................................................7

*Diversified Group, Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) ..............................................................................................11

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 ................................................................................................................................9

*In re Bank of New York Derivative Litig.*,
320 F.3d 291 (2d Cir. 2003) ........................................................................................................8

*Official Committee of Asbestos Claimants of G-1 Holding, Inc. v. Heyman*,
No. 01-cv-8539, 2003 WL 22790916 (S.D.N.Y. Nov. 25, 2003) ..............................................1

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
67, A.3d 330, 342-43 (Del. 2013) ...............................................................................................9

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1980) (Brennan, J., concurring) ........................................................................12

*Tachiona ex rel. Tachiona v. Mugabe*,
186 F. Supp. 2d 383 (S.D.N.Y. 2002) .....................................................................................1, 7

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..................................................................................................................10

*United States Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas*,
No. 98-cv-3099, 2001 WL 300735 (S.D.N.Y. Mar. 27, 2001) ..................................................9

*United States Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) ......................................................................................................11

*Wolf v. Assaf*,
    No. 15339, 1998 WL 326662 (Del. Ch. June 16, 1998)..........................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 24 ...............................................................................1, 7, 8, 11, 12

Non-parties and proposed intervenor-defendants Liquid Realty Partners III, L.P. ("LRP III") and Liquid Realty Partners III-A, L.P. ("LRP III-A", and collectively the Funds"), and ARC (GP1) Ltd., as general partner of the Funds ("ARC" or the "New General Partner" and together with the Funds, the "Intervenors") respectfully submit this memorandum in support of their Motion to Intervene and submit to this Court's jurisdiction as defendants in this matter pursuant to Federal Rule of Civil Procedure 24 ("Motion to Intervene").[1]

## PRELIMINARY STATEMENT

The Funds and ARC bring this Motion to Intervene because this lawsuit directly impacts the Fund's assets and the management of the Funds by the Funds' new general partner, ARC. At issue in this litigation is approximately £16.3 million (approximately $27 million at current exchange rates), which Plaintiff LRGP III, LLC ("LRGP")—the Fund's removed general partner—improperly withdrew from the Funds' accounts in February 2014, as purported fees for services (the "Additional Fees") that Plaintiff SLRA, Inc., allegedly performed as far back as 2006. These sums are the Funds' assets, and despite requests by the named Defendants, which

---

[1] Though Rule 24(c) of the Federal Rules of Civil Procedure ostensibly requires all interveners to submit a pleading setting out "the claim or defense for which intervention is sought," FED. R. CIV. P. 24(c), "[w]here . . . the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393, n.8 (S.D.N.Y. 2002) (waiving the pleading requirement where the applicant's filings were sufficient to put the opposing party on notice of the movant's positions); *see also Official Committee of Asbestos Claimants of G-1 Holding, Inc. v. Heyman*, No. 01-cv-8539, 2003 WL 22790916, at *4 (S.D.N.Y. Nov. 25, 2003) (allowing intervenor to adopt "claims already asserted" by plaintiff where no prejudice would be caused to either party). Here, the Funds' position on the litigation is readily apparently from other filings, namely this application for intervention, and Plaintiffs will not be prejudiced from a waiver of the pleading requirement. The Funds requests this Court to waive its obligation to file an answer to the Complaint, since this instant Motion to Intervene clearly articulates the Funds' position on the subject matter of the litigation.

1

are seven of the Funds' limited partners, LRGP has refused to return the Additional Fees and failed to provide any meaningful justification for such fees.

Also at issue is LRGP's steadfast refusal to relinquish control and management of the Funds and turn over the Funds' books and records and remaining cash and assets to ARC— the new general partner that the limited partners, who possess a significant majority of the capital commitments in the Funds, chose to replace LRGP.[2] Currently, LRGP continues to maintain sole control over the significant remaining partnership assets of approximately £17 million (approximately $28,225,000 at current exchange rates) and the £16.3 million in Additional Fees improperly withdrawn from the Funds. The New General Partner has no specific information as to the whereabouts or status of the remaining assets of the Funds because, contrary to the requirements of the relevant limited partnership agreements ("LPAs"), LRGP has failed to provide the Funds' investors any meaningful quarterly Fund updates since September 2013, not furnished the audited financial statements for 2013, and not forwarded the relevant books and records to the New General Partner. The New General Partner, therefore, is unable to carry out all of its responsibilities under the LPAs and fulfill its fiduciary obligations to all of the limited partners. Both the New General Partner and the Funds' assets are thus being held hostage, and the assets are in jeopardy of being dissipated. Indeed, as recently, as September 2, 2014, SLRA suggested that Plaintiffs are paying their legal fees for this litigation with the Funds' assets.

Accordingly, the Funds' and the New General Partner's participation in this litigation is necessary and essential to safeguard their interests, which may be irreparably impaired by the disposition of the action. Moreover, the named Defendants, which are only certain limited partners of the Funds, cannot adequately represent the interest of the Funds and *all* of their

---

[2] As part of its Complaint in this litigation, LRGP is contesting its removal as general partner and is seeking declaratory relief stating the same.

2

limited partners. Nor can they adequately represent the interest of the New General Partner, which has distinct duties to fulfill under the LPAs and its fiduciary duties to all of the limited partners of the Funds. For these reasons, as discussed more fully below, the Funds and the New General Partner respectfully request that the Court grant this Motion.

## RELEVANT BACKGROUND

### The Funds

The Funds are Delaware limited partnerships formed on or around January 6, 2006, for the primary purpose of investing in real estate private equity secondary transactions, which involve the purchase of pre-existing investor commitments to real estate private equity funds. Declaration of Christopher Rowland ("Rowland Decl."), at ¶ 6. From their inception, the Funds began acquiring a portfolio of real estate trust interests with underlying investments in properties throughout the United Kingdom. LRGP referred to the investment portfolio as the "Ursula Portfolio." The limited partners of the Funds committed a total of approximately £400,402,425 toward purchasing the Ursula Portfolio. Defendants are limited partners that account for approximately 75% of the overall capital commitments (the "Limited Partners"). Rowland Decl. at ¶ 7.

The respective Funds are governed by the LPAs, which delineate the respective roles and responsibilities of the general partner and limited partners.[3] A subset of limited partners, including named Defendants, was appointed to serve on the Advisory Committee that the LPAs entrusted with certain duties and responsibilities with respect to the Funds. Rowland Decl., at ¶

---

[3] Although the limited partnership agreements for LRP III and LRP III-A differ in some respects, for purposes of this motion, the relevant provisions are substantively the same. True copies of relevant excerpts of the LPAs are attached to the Declaration of Christopher Rowland as Exhibits A and B respectively.

3

5. From their inception in January 2006 until August 25, 2014, the Funds operated under the control of LRGP, which, as general partner, undertook the standard general partner activities of investing, recapitalizing and disposing of the Funds' assets. In return, LRGP (or its affiliate) received an annual investment management fee ("Management Fee") equal to 1.25% of the assets under management, plus carried interest. Rowland Decl., at ¶ 8. The Funds are currently in wind-down, and the vast majority of investments have been realized. As a result, a significant amount of cash remains in the Funds' accounts and those monies must be distributed to the limited partners in a manner consistent with the LPAs. Rowland Decl., at ¶ 19.

### LRGP's Improper Withdrawal of the Additional Fees

Section 5.14 of the LPAs requires LRGP to obtain prior approval from the Advisory Committee before engaging in transactions with itself or its affiliates, including transactions to perform services for the Funds. In February 2014, however, LRGP notified the Advisory Committee for the first time that it had unilaterally withdrawn over £16.3 million from the Funds as fees for services allegedly performed by its affiliate, SLRA.[4] These fees were beyond the fees payable in respect of the Management Fee. Rowland Decl., at ¶ 10. LRGP informed the Advisory Committee that the alleged services were performed as early as 2006, that the majority of the services were completed in 2006, and that the services related to investments in the Ursula Portfolio. Rowland Decl., at ¶ 10. Significantly, however, the Advisory Committee had never been advised of the Additional Fees prior to February 2014 and had not approved such fees despite the requirements of § 5.14 of the LPAs. Neither the annual audited financial statements nor the quarterly financial updates ever accounted for any of the Additional Fees. Rowland Decl.,

---

[4] The Funds' financial statements and other assets were reported in British pounds sterling. At the current exchange rate, £16.3 million is over $27,000,000. Rowland Decl., at ¶ 10.

4

at ¶ 10. After LRGP revealed that it withdrew the Additional Fees from the Funds' account, the Limited Partners requested (i) that LRGP provide financial information about the disbursement, and (ii) that LRGP return those sums back to the Funds' account until the dispute was resolved. Rowland Decl., at ¶ 20. LRGP refused to return the monies disbursed to SLRA, could not adequately substantiate the services allegedly rendered by SLRA with any specificity, and failed to produce evidence that it obtained the appropriate approval for those transactions. Rowland Decl., at ¶ 20.

**LRGP is Removed and Replaced as General Partner**

Because of LRGP's obstructive conduct, the Advisory Committee removed it as general partner pursuant to § 5.6 of the LPAs, which permits (i) five or more unaffiliated limited partners that collectively hold over 66 2/3% of the Funds' capital commitments to remove the general partner on a "no fault" basis; and (ii) five or more unaffiliated limited partners collectively holding more than 50% of the Funds' capital commitments to remove the general partner "for cause." LPAs § 5.6. On June 24, 2014, pursuant to the terms of the LPAs, the Limited Partners and Virginia Retirement System ("VRS"), constituting well over 66 2/3% of the capital commitments of the Funds served by overnight delivery a Notice of Removal (the "Notice of Removal") on LRGP, removing it as general partner on both a "for cause" and "no fault" basis. Rowland Decl., at ¶ 4; Rowland Decl., Ex. D.

The Advisory Committee also took steps to appoint a replacement general partner pursuant to § 5.6(c) of the LPAs, which permit limited partners collectively holding over 80% of each Fund's capital commitments to appoint a new general partner. LPA § 5.6(c); Rowland Decl., at ¶ 13. On August 22, 2014, the members of the Advisory Committee and additional limited partners, collectively constituting well over 80% of the capital commitments of each

5

Fund, served by overnight delivery the Notices of Appointment on LRGP, naming ARC as the replacement general partner. Rowland Decl., at ¶ 13; Rowland Decl., Ex. D. The Notice of Removal and Notices of Appointment were thus properly executed and served. Rowland Decl., at ¶ 14. Under the terms of the LPAs and Notice of Removal, the "no fault" removal of LRGP as general partner of the Funds became effective on August 25, 2014 – 60 days from LRGP's receipt of such notice. On that date, consistent with its duties as replacement general partner, the New General Partner sent a letter to LRGP requesting the Fund's books and records, assets and other necessary information. LRGP failed to comply with that request; instead, it filed suit in this Court and has continued purporting to act as general partner.[5] Rowland Decl., at ¶ 15.

On August 26, 2014, LRGP and SLRA filed the Complaint in this case asserting three causes of action seeking declarations that (i) the Notice of Removal is defective under the LPAs; (ii) the Notices of Appointment are invalid under the LPAs; and (iii) the LPAs permit LRGP to pay the Additional Fees.[6] Compl. ¶¶ 87-100. The Complaint did not name the Funds, nor did it name the New General Partner. Contemporaneous with this Motion, the named Defendants have filed a Motion for Preliminary Injunction, seeking, among other things, an order enjoining Plaintiffs from further conducting any business of the Funds and dissipating the $27 million in purported Additional Fees. Rowland Decl., at ¶ 22.

---

[5] In fact, on September 2, 2014, LRGP's affiliate, SLRA, sent a quarterly update letter to the Funds' investors (the "Sept. 2 Letter") indicating that no financial reporting or audit opinions would be forthcoming until this action and the related Arbitration are resolved. Rowland Decl., at ¶ 23; *id.*, Ex. 8.

[6] On July 3, 2014, LRGP also commenced an arbitration proceeding before the American Arbitration Association seeking "[a] declaration that LRGP has not engaged in any of the bad boy acts that could potentially justify a for cause removal of LRGP as the Funds' general partner … [and a] declaration that LRGP was entitled to retain the Affiliate and to pay the [Additional] Fees to the Affiliate for the essential services that the Affiliate provided to the Funds…." (the "Arbitration").

# ARGUMENT

## A.  Intervention as a Matter of Right

Pursuant to Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to intervene by right when it timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). An applicant seeking intervention by right must satisfy four factors: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06-cv-2875, 2007 WL 2593000, at *2 (S.D.N.Y. Sept. 7, 2007) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000); *accord D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001); *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 76 (S.D.N.Y. 2003). When evaluating these four factors, "the test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *Tachiona*, 186 F. Supp. 2d at 394 (S.D.N.Y. 2002) (citing *United States v. Hooker Chems. & Plastics*, 749 F. 2d 968, 983 (2d Cir. 1984)).

As discussed below, ARC and the Funds have an interest in the instant litigation that is direct, substantial and legally protectable and all four factors counsel in favor of granting the Intervenors' motion.

### 1.  Timeliness

In determining whether an intervention motion is timely, "courts should consider '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion

7

is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

Here, there can be no question that the Motion to Intervene is timely. The Funds have filed this Motion a mere fifteen days after LRGP filed and served its Complaint, and before named Defendants have interposed an Answer. The litigation is still in its preliminary stages and discovery has not commenced. Thus, LRGP will not be prejudiced or adversely affected in any way by the timing of this Motion to Intervene.

By stark contrast, the Funds and the New General Partner will be severely prejudiced if the Court denies the intervention, given the clear interests that they have in this litigation and the fact that, presently, there are no parties who can adequately represent the Funds interests or the New General Partner's interest.

### 2.     Interest in Litigation Which May Be Injured Without Intervention

A party whose interest may be impaired by the result of a lawsuit possesses a "clear interest" in its outcome and ultimately satisfies the second factor for an intervention by right. *See Cole Mechanical Corp.*, 2007 WL 2593000, at *4 (citing *Coleman Cap. Corp. v. Fid & Deposit Co.*, 43 F.R.D. 407, 408 (S.D.N.Y. 1967) and *United States ex rel. Foster Wheeler Corp. v. American Sur. Co.*, 142 F.2d 726, 728 (2d Cir. 1944)). The Second Circuit has held that "for [a movant's] interest to be cognizable under Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (*quoting Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).

Here, the Funds and the New General Partner clearly have cognizable and distinct interests in this matter and undoubtedly would be considered "direct, substantial, and legally

protectable." The subject matter of this lawsuit is both LRGP's improper withdrawal of the Funds' monies as purported Additional Fees for SLRA's services and LRGP's refusal to relinquish control over the Funds' assets and monies despite the clear wishes of limited partners with the significant majority of the capital commitments in the Funds. Currently, LRGP continues to maintain sole control over the significant remaining partnership assets of approximately £17 million (approximately $28,225,000 at current exchange rates) and the £16.3 million in Additional Fees improperly withdrawn from the Funds. Rowland Decl., at ¶ 10. LRGP has refused to provide any meaningful information about the status, liquidity, and location of the monies and assets of the Funds, and thus, the Funds and their assets are being held hostage. Rowland Decl., at ¶ 20. Obviously, the Funds have an interest in this litigation that could potentially be harmed without intervention.

Separately, ARC, as the new general partner of the Funds, has a direct interest in this litigation as well. Under Delaware law,[7] as the new general partner of the Funds, ARC owes fiduciary duties to all of the limited partners of the Funds, including Defendants. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Chan. 2012) (general partners to a partnership owe default fiduciary duties on limited partners; regardless, an active role in the management can trigger fiduciary duties). As part of its fiduciary duties, ARC is charged with protecting the assets of the Funds on behalf of the limited partners. *See Atr-Kim Eng Fin. Corp. v. Aaraneta et*

---

[7] Under the terms of the LPAs, LRGP and the limited partners mutually agreed that any substantive disputes regarding the LPAs themselves would be governed by Delaware law. Section 16.1 of the LPAs provides that the LPAs themselves "and any controversies, claims or arbitration hereunder shall be governed by and construed in accordance with the laws of the State of Delaware (without regard to its conflict of law rules) ...." Both New York and Delaware courts give effect to choice of law provisions in a freely negotiated private agreement unaffected by fraud, undue influence or overweening bargaining power. *See e.g., SIGA Techs., Inc. v. PharmAthene, Inc.*, 67, A.3d 330, 342-43 (Del. 2013); *United States Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas*, No. 98-cv-3099, 2001 WL 300735, at *15 (S.D.N.Y. Mar. 27, 2001). Accordingly, Delaware law should govern the substantive issues in this litigation.

*al.*, No. 489-N, 2006 WL 4782272, at *16, n.99 (Del. Chan. Dec. 21, 2006) (*citing Lank v. Steiner*, 213 A.2d 848, 852 (Del. Ch. 1965) *aff'd* 224 A.2d 242 (Del. 1966)). Moreover, Delaware recognizes that corporate fiduciary duty principles encompass a duty to disclose all reasonably available information material to the beneficiaries of the fiduciary duty for consideration of a matter requiring the beneficiaries' actions. *See Wolf v. Assaf*, No. 15339, 1998 WL 326662, at *1 (Del. Ch. June 16, 1998) (citing *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. 1997)).

As noted above, because of LRGP's misconduct, the New General Partner has no information about the present status of the Funds, as LRGP has refused to provide the New General Partner with access to the Funds' books and records, accounts, monies and other assets. ARC cannot carry out its duties as the general partner of the Funds and fulfill its fiduciary obligations to all of the Funds' limited partners to ensure the continued custody and protection of the Fund's assets nor can it provide the limited partners with material information respecting the Funds. Accordingly, the New General Partner must be involved in this litigation.

In short, both the Funds and the New General Partner have "clear interest[s]" in this litigation that are not remote and speculative, but actual and capable of producing actual injuries to the Funds and the New General Partner without engagement in this action. Thus, the Funds and the New General Partner have satisfied the second and third requirements for intervention as a matter of right.

### 3. Inadequate Representation by Other Defendants

An applicant for intervention has a "minimal" burden of showing that there "may be" inadequate representation of its interests by the parties. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538, n. 10 (1972). Here, while the named Defendants intend to defend vigorously against LRGP's claims, the named Defendants, in their individual capacities, have no authority to

represent the interests of the Funds themselves or the Funds' other limited partners who were not named in this action. Thus, insofar as the named Defendants intend to interpose an answer or any affirmative defenses and/or counterclaims against Plaintiffs, they are not in a position to seek relief on behalf of the Funds. Nor can Defendants represent the interests or seek relief on behalf of the New General Partner, which, as discussed above, has its own distinct interests with respect to the Funds and all of the Funds' limited partners. Thus, only the Funds and the New General Partner can adequately represent their own respective interests which are subject to harm if intervention is not granted.

Because the Intervenors have sufficiently demonstrated a "clear interest", an injury that would be sustained from intervention being refused, and inadequate representation of its own interests through the consequences of this action, intervention as of right is warranted.

### B.    Alternatively, The Funds Should Be Allowed to Permissively Intervene

In the alternative, this Court should grant Intervenors permissive intervention under Rule 24(b)(1)(B). Permissive intervention is within this Court's broad discretion. *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003); *see United States Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978). In exercising that discretion, the Second Circuit requires district courts to consider factors that "'include the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Diversified Group*, 217 F.R.D. at 157 (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). This Court's discretion in granting a motion to intervene on a permissive basis "is very broad." In general, courts will

11

apply a less demanding standard for allowing parties to proceed as a permissive intervenor than as an intervenor by right. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 381–82 (1980) (Brennan, J., concurring).

For the same reasons above, the Court should grant permissive intervention. The entirety of the Funds' assets and monies is at stake in this litigation, and the Funds together with the New General Partner are in the best position to safeguard the interests of the Funds and all of their limited partners. Additionally, the New General Partner is the only party that can protect and advance its own distinct interests in fulfilling its fiduciary duties to all the limited partners of the Funds. Moreover, as noted above, this Motion is timely and Plaintiffs will suffer no prejudice. The Funds will not bring significant added discovery to the proceedings. Moreover, it is quite obvious that the interests of the Intervenors and the Defendants are inextricably linked and share common questions of law and fact, namely information about the status and location of the monies and assets in the Funds, LRGP's refusal to peaceably transfer control and management powers of the Funds to ARC, and LRGP's impermissible withdrawal of the Additional Fees. As such, the claims, defenses, and factual and legal theories of the Funds and the Defendants are asserted against the same party, LRGP.

*[Intentionally Left Blank]*

## CONCLUSION

For the foregoing reasons, the Funds and the New General Partner respectfully request that the Court grant its application for intervention as party defendants as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, as a matter of permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2).

Dated: September 9, 2014
       New York, New York

                                Respectfully submitted,

                                AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____
James P. Chou
One Bryant Park
New York, New York 10036
Tel: (212) 872-1000
Fax: (212) 872-1002

Charles F. Connolly
Aditya G. Nagarajan
1333 New Hampshire Avenue N.W.
Washington, DC 20036
(202) 887-4000

*Counsel for Proposed Intervenor-Defendants Liquid Realty Partners III, L.P., Liquid Realty Partners III-A, L.P. and ARC (GP1) Ltd.*

13