Charles F. Connolly                              James P. Chou
Aditya G. Nagarajan                              AKIN GUMP STRAUSS HAUER
AKIN GUMP STRAUSS HAUER                            & FELD LLP
  & FELD LLP                                     One Bryant Park
1333 New Hampshire Avenue N.W.                   New York, NY 10036
Washington, DC 20036                             (212) 872-1000
(202) 887-4000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LRGP, LLC and SLRA INC.,

                Plaintiffs,                Civil Action No. 14-cv-6937-RJS

        v.

CPP INVESTMENT BOARD REAL ESTATE
HOLDINGS INC., GOTHIC CORPORATION,
INTERNATIONAL BANK OF
RECONSTRUCTION AND DEVELOPMENT AS
TRUSTEE FOR THE STAFF RETIREMENT
PLAN AND TRUST AND THE RETIRED STAFF
BENEFITS PLAN AND TRUST, LIBERTY
INSURANCE CORPORATION, LIBERTY
MUTUAL FIRE INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
and EMPLOYERS INSURANCE COMPANY OF
WAUSAU,

                Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

ARGUMENT .......................................................................................................................1

I.      DEFENDANTS DID NOT DELAY IN BRINGING THIS MOTION ...............................1

II.     IRREPARABLE HARM EXISTS BECAUSE PLAINTIFFS ARE HOLDING
        THE FUNDS HOSTAGE .................................................................................2

III.    DEFENDANTS' SHOWING OF LIKELIHOOD OF SUCCESS ON THE
        MERITS REMAINS INTACT.............................................................................4

        A.      Section 5.6(a) of the LPAs Belie Plaintiffs' Contention That the Notice of
                Removal Was Invalid .............................................................................4

        B.      Section 5.14 Does Not Entitle Plaintiffs To The Additional Fees............................6

IV.     THE PROPRIETY OF THE ADDITIONAL FEES IS NOT AN ARBITRAL
        ISSUE ...........................................................................................................9

V.      PLAINTIFFS HAVE NOT DEMONSTRATED THAT A BOND IS
        WARRANTED ...............................................................................................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

CASES

*Audubon Levy Investors, LP v. E. W. Realty Ventures, LLC,*
   698 F. Supp. 2d 328 (E.D.N.Y. 2010) ..................................................................3, 4

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995)................................................................................................10

*GMG Capital Invs., LLC, v. Athenian Venture Partners I, LP,*
   36 A.3d 776 (Del. 2012) ..........................................................................................8

*Huatuco v. Satellite Healthcare,*
   CV 8465-VCG, 2013 WL 6460898 (Del. Ch. Dec. 9, 2013) ...................................8

*In re the Arbitration Between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp.
   Grp.,*
   491 F. Supp. 2d 413 (S.D.N.Y. 2007).....................................................................10

*In re Chin Thloot Har Wong,*
   224 F. Supp. 155 (S.D.N.Y. 1963) ...........................................................................8

*John Hancock Mut. Life Ins. Co. v. Barnes,*
   CV 12,545, 1992 WL 101610 (Del. Ch. May 11, 1992) ......................................3, 4

*Sokolowski v. Metro. Transp. Auth.,*
   723 F.3d 187 (2d Cir. 2013)....................................................................................10

*United Acquisition Corp. v. Banque Paribas,*
   631 F. Supp. 797 (S.D.N.Y. 1985) ...........................................................................4

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition to Defendant' Motion for a Preliminary Injunction raises four main points, none of which has any merit:

- First, Plaintiffs' contention that this Motion should be denied as untimely rests on a revisionist version of the facts.  This Motion was brought within two weeks of it becoming clear that Plaintiffs had refused to surrender control of the Funds to the newly appointed general partner and one week after plaintiffs informed the Funds' limited partners that no financial reporting would be forthcoming;

- Second, Plaintiffs miss the point when they argue that Defendants face no irreparable harm because the dissipation of the Additional Fees is purely speculative and compensable with money damages.  The irreparable harm Defendants and Proposed Intervenors face here is Plaintiffs' refusal to relinquish control over the management of the Funds, thereby denying Defendants their clear, bargained-for right to replace LRGP as general partner;

- Third, Plaintiffs' arguments about the propriety of the Additional Fees, and the validity of LRGP's removal and replacement, are based on a misreading of the LPAs; and

- Fourth, Plaintiffs' position that the Arbitration must proceed because the propriety of the Additional Fees is an arbitral issue runs afoul of the clear dispute resolution provisions of the LPAs.

In short, irreparable harm to Defendants and Proposed Intervenors is imminent, Defendants are likely to succeed on the merits, and none of Plaintiffs' theories has merit.  Thus, as discussed further below, a preliminary injunction to protect Defendants, the Funds, and the Funds' new general partner, ARC, is necessary.

## ARGUMENT

## I.   DEFENDANTS DID NOT DELAY IN BRINGING THIS MOTION

Plaintiffs wrongly assert that Defendants waited six months after learning that LRGP disbursed the Additional Fees to SRLA to bring this Motion.  In doing so, Plaintiffs assume that

---

[1] All capitalized terms used herein shall have the meanings ascribed to them in the Defendant's opening brief, which is cited herein as "Def. Br. __".  Plaintiffs' opposition brief is cited as "Opp. Br. __".

this Motion was precipitated solely by concerns over the dissipation of the Additional Fees.  In fact, this Motion was necessitated by LRGP's refusal to (i) relinquish control over the Funds, (ii) engage in an orderly transition of responsibilities to ARC, and (iii) turn over the Funds' books and records and other assets once LRGP's removal, and ARC's appointment, became effective on August 25, 2014.  Plaintiffs' lawsuit, filed on August 26, left no doubt that LRGP would not cooperate.  Defendants filed this Motion only two weeks later—a mere one week after SLRA confirmed Plaintiffs' unwillingness to provide Defendants any further financial information.  Accordingly, Plaintiffs' accusations of delay are unfounded.

## II.     IRREPARABLE HARM EXISTS BECAUSE PLAINTIFFS ARE HOLDING THE FUNDS HOSTAGE

Plaintiffs suggest that the Limited Partners' motion is based "largely upon sheer speculation concerning … potential dissipation of the Funds' assets." Opp. Br. at 15.  That suggestion misses the point.  Plaintiffs threaten irreparable harm because they refuse to cede control of the Funds and Funds' assets, thereby depriving Defendants' of their unique, bargained-for right to remove and replace the general partner.  That harm is not only imminent, it is current and ongoing.  There can be no dispute that LRGP is resisting the transition of management duties to ARC:  Plaintiffs have refused to provide the Funds' books and records and other critical information necessary for the Funds' operation.  *See* Rowland Decl. at ¶ 18.  They have refused to provide any meaningful justification for the £16.3 million of Additional Fees paid to SLRA. Gould Decl. at ¶ 19.  They have refused to provide financial statements, instead indicating that no further financial reporting would be forthcoming.  *Id.* at ¶ 31, Ex. 3.  And most obviously, rather than relinquishing control of the Funds sixty days after receiving a notice of removal, Plaintiffs filed suit on day sixty-one.

This wrongful interference with Defendants' contractual right to remove and replace the Funds' general partner constitutes irreparable harm. *See Audubon Levy Investors, LP v. E. W. Realty Ventures, LLC*, 698 F. Supp. 2d 328, 332–33 (E.D.N.Y. 2010). In *Audubon Levy*, the court found irreparable harm in a company's "allegedly illicit failure to recognize its removal as Manager" of a joint venture. *Id.* at 331. In doing so, the court adopted a magistrate judge's finding that Audubon Levy's right to remove East West as manager was a unique, bargained-for remedy that was not easily compensated for after the fact and thus constituted irreparable harm. *Id.* at 332. Adding that the "failure to produce *all* relevant books and records also weighed in favor of finding irreparable harm," *id.* at 333, the court enjoined the non-movant from "acting on behalf of" the joint venture or "dissipating, transferring … or expending any type" of the venture's assets, *id.* at 334. As in *Audubon*, LRGP has failed to recognize its removal as general partner, and has failed to produce books and records to ARC, in violation of the no-fault removal provisions in the LPAs. That is harm enough to warrant injunctive relief.

Plaintiffs' reliance on *John Hancock Mut. Life Ins. Co. v. Barnes*, CV 12,545, 1992 WL 101610 (Del. Ch. May 11, 1992) is misplaced. In that case, limited partner John Hancock sought to enjoin the "general partners from conducting themselves as the general partners," following delivery of a notice of removal. 1992 WL 101610, at *2. The court denied the relief requested, but not for the reasons Plaintiffs suggest. *See* Opp. Br. at 15. Rather, the Court found that Hancock did not yet have a "'legal right' to remove the general partners" because the provision on which Hancock relied only authorized removal *for cause*, and Hancock had not yet demonstrated "at least a reasonable probability that the facts essential to [its] position [were] true." 1992 WL 101610, at *2. This case is different. Here, it is clear that the Defendants have

3

the "legal right" to remove LRGP on a no-fault basis and no adjudication of "fact sensitive issues," is necessary.  *Id.* at *3.  Thus, a preliminary injunction is appropriate.

Because refusal to cede control of a partnership constitutes irreparable harm, and LRGP *is now and will continue* to inflict that harm absent an injunction, the threat of irreparable harm to the Defendants—and the Funds—is imminent and genuine.  Just as a finding that LRGP was properly removed would require it to relinquish control of the Funds, allowing LRGP to retain control of the Funds during litigation threatens irreparable injury.[2]  *See United Acquisition Corp. v. Banque Paribas*, 631 F. Supp. 797, 805 (S.D.N.Y. 1985) ("Normally, in a case where specific performance would be appropriate, since the remedy at law is inadequate, a finding of irreparable harm in the denial of an injunction would also be appropriate."); *see also Audubon*, 698 F. Supp. 2d at 333 ("[D]enial of [the] right" "to be the sole captain of the Terrace LLC ship" "cannot be readily compensated for after the fact.").

## III.   DEFENDANTS' SHOWING OF LIKELIHOOD OF SUCCESS ON THE MERITS REMAINS INTACT

### A.   Section 5.6(a) of the LPAs Belie Plaintiffs' Contention That the Notice of Removal Was Invalid

For the reasons stated in Defendants' opening brief, Plaintiffs' contention that the Notice of Removal is invalid because it purportedly precludes Plaintiffs from paying themselves "settlement fees," *i.e.*, accrued Management Fees plus an additional twelve months of Management Fees after termination—has no merit.  Def. Br. at 16–19.  Plaintiffs now assert that § 5.6(a) of the LPAs requires such payment of such fees **before** LRGP can be removed. Plaintiffs are wrong.  Section 5.6(a) provides: "**Upon removal** pursuant to this Section 5.6(a), the

---

[2] In fact, Defendants and, if permitted to intervene, ARC and the Funds, intend to file counterclaims seeking, among other things, specific performance of the LPAs requiring Plaintiffs to relinquish control over the Funds and turn over all books, records and assets.

General Partner shall be due (i) the accrued Investment Management Fee due to it *as of the date of termination*,  plus an amount equal to the Investment Management Fee it would have been entitled to during the twelve (12) month period *after the date of termination* …."  LPAs § 5.6(a) (underlining in original; emphasis added).

As is clear from this provision, the LPAs intend for the settlement fees to be paid *after* the general partner has *already* been removed and terminated, not before.  The only condition precedent to removal specified by § 5.6(a) is the appointment of a new general partner, which has occurred here with the appointment of ARC.  *Id.* ( "… such removal shall not become effective until a successor General Partner is admitted pursuant to <u>Section 5.6(c)</u> …") (underlining in original).  Indeed, it would be nonsensical for the LPAs to require a general partner—particularly one that has engaged in misconduct and in whom the limited partners have no confidence—to pay itself accrued Management Fees before that general partner can be effectively removed.[3]  The logic of this timing is evidenced by the fact that according to the September 30, 2013 financials—financials prepared by the Plaintiffs and the most recent financials available to the LPs—the one-year advance Management Fee should be in the neighborhood of £212,500, but LRGP has claimed that the one year advance Management Fee is in the neighborhood of £419,075.  Landress Decl. at ¶ 60, 61.  Accordingly, Plaintiffs have failed to establish that the Notice of Removal was improper.  And because Plaintiffs' contention that

---

[3] Plaintiffs mischaracterize the language in § 5.6(a) to support their position. Opp. Br. at 17.  Specifically, they cherry pick a portion of the first sentence of § 5.6(a) stating that "effective . . . upon payment to [LRGP] as specified below, it will be removed as the General Partner . . ." LPAs § 5.6 (a); Opp. Br. at 17.  Read in its entirety, however, the first sentence of § 5.6 (a) is not a directive requiring the payment of the settlement fees as a condition to removal.  Rather, it is a provision authorizing a requisite number of limited partners to send a notice of removal to the general partner, and the language about the payment of settlement fees is merely a description of the suggested contents of the notice.  As discussed above, the provision that does directly require the payment of settlement fees is premised on the removal of the general partner *already* having transpired before such payment is made.

the adequacy of the Notices of Appointment is based on the alleged deficiency of the Notice of Removal, Plaintiffs have likewise failed to establish that the Notices of Appointment were invalid.  Therefore, Defendants are substantially likely to succeed on the merits of the no-fault removal and general partner replacement.

> ### B.       Section 5.14 Does Not Entitle Plaintiffs To The Additional Fees[4]

Contrary to what Plaintiffs contend, § 5.14 does not afford LRGP blanket authority to pay the £16.3 million of Additional Fees to SLRA.  Section 5.14 only permits the general partner, with approval of the Advisory Committee, to hire an affiliate for services "that would otherwise be performed for the [Funds] by third parties."  LPAs, § 5.14(a).  Here, SLRA's "active services" fell within the scope of the traditional investment management activities expected of LRGP and covered by the Management Fee.  The Management Fee was tied to the Funds' net asset value, essentially affording LRGP a large potential upside in fees if the Funds performed as LRGP expected.  The Funds' poor performance and the unforeseen global financial crisis made that arrangement a losing one, but that cannot justify LRGP's withdrawal of the £16.3 million in Additional Fees for purported services—particularly fees supposedly due from 2006 (*before* the financial crisis) and, suspiciously, not disclosed, much less apparently calculated, until 2014.[5]

---

[4] Plaintiffs assert that the Complaint's request for declaratory relief regarding the propriety of the Additional Fees is conditioned on the arbitral tribunal's determination that this issue is not arbitrable.  As noted in Defendants' opening brief, however, Defendants do not concede that the tribunal has the primary power to decide arbitrability.  Def. Br. at 16 n.7.  As discussed in the opening brief and below, the permissibility of the Additional Fees is not an arbitrable issue and must be decided by a court of law.  Def. Br. at 15; *infra* pp. 9–10 & n.7.

[5] Plaintiffs claim that "the Funds actually paid below-budget fees" and saved millions of dollars is not only misleading but totally irrelevant.  *See* Opp. Br. at 6.  Whether or not the combined fees charged to the Funds by Plaintiffs was below or above a budget is irrelevant to the issue of whether the £16.3 million in removed Additional Fees were properly taken, which is governed by the LPAs and Plaintiffs' fiduciary duties to the limited partners.  Furthermore, the Plaintiffs' claim is misleading for two reasons:  (i) the Funds themselves lost tens of millions of

Even if some of SLRA's purported services fell within the scope of § 5.14, LRGP was required under that section to obtain Advisory Committee approval before engaging SLRA to perform such services.[6]  As relevant here, § 5.14 authorizes the Funds to "engage in any transaction with or employ or retain the General Partner or any of its respective Affiliates to provide services … provided, however, the Advisory Committee must approve all such transactions." LPAs § 5.14.  Plaintiffs have responded that this approval requirement applies only to "transactions," not "services."  Opp. Br. at 17-19.  But as explained at length in Defendants' opening brief, this contrived distinction between "transactions" and "services" rests on a strained reading of § 5.14 and ignores basic sentence structure.  Def. Br. at 21.  Under a plain reading of § 5.14, the terms, "any transaction with," "employ," and "retain" are all antecedents to the language that follows: "the General Partner or any of its respective Affiliates **to provide services**."  Plaintiffs' reading artificially untethers "any transaction with the General Partner or any of its respective Affiliates" from the phrase "to provide services," and undermines the framework of § 5.14.  Moreover, contextually, the plural term, "transactions" in the last clause of § 5.14 plainly encompasses all of the business dealings the Funds are authorized to engage in: "any transaction with," "employ," and "retain."

Plaintiffs' only defense appears to be that, if "transaction" includes a services transaction, the phrase "or employ or retain" would be superfluous.  *See* Opp. Br. at 18–19.  But Plaintiffs fail

---

pounds; and (ii) the total fees should have been significantly less than "budgeted" because they were principally tied to net asset value, which declined far beyond anyone's prediction.

[6] LRGP was also required to determine that any such fees were "fair and reasonable" **before** engaging an affiliate to perform services, not seven years after the fact.  *See* Landress Decl. ¶ 48 (the "Fees first became determinable … in 2013."); Landress Decl., Exh 6, page 3 (Eisner Amper memo determines that fees should be reported in 2013 "now that the amount of the Other Related Fees is calculable").  Importantly, Eisner Amper did not review the books and records of the Funds in offering its "opinion," which is the second one it has written in an effort to justify the lack of accounting for the Fees.

to grasp that under a plain reading, "transaction" is a broad term that can encompass a multiplicity of meanings, including a services arrangement. *See* Def. Br. at 22 (explaining that a transaction can be "'an exchange or transfer of goods, *services*, or funds.'") (citation omitted, emphasis added). Further, Plaintiffs fail to appreciate that "employ or retain" is a phrase that clarify the types of "transactions" contemplated by § 5.14. Such a clarifying function of a broader term does not render any of the terms—"transaction," "employ," or "retain" superfluous. *In re Chin Thloot Har Wong*, 224 F. Supp. 155, 164 (S.D.N.Y. 1963) ("[T]he additional words … serve a clarifying function and are not superfluous."); *Huatuco v. Satellite Healthcare*, CV 8465-VCG, 2013 WL 6460898 (Del. Ch. Dec. 9, 2013) *aff'd*, 93 A.3d 654 (Del. 2014) ("[T]his Section is not superfluous, as it is meant to clarify ….").

Lastly, Plaintiffs' reading flouts the obvious purpose of § 5.14: to ensure that the general partner cannot engage in self-dealing without the approval of the Advisory Committee. In Plaintiffs' view, (1) LRGP could *not* have sold a fraction of a percent of Project Ursula to SLRA without approval, no matter how insignificant the value of that interest, but (2) LRGP *could* agree to pay SLRA tens of millions of dollars in fees—amounts far greater than the total investment Management Fees earned over the life of the Funds—without approval. That reading is simply inconsistent with "the agreement's overall scheme," *GMG Capital Invs., LLC, v. Athenian Venture Partners I, LP*, 36 A.3d 776, 779 (Del. 2012), and is substantially likely to be rejected on the merits.[7]

---

[7] As for balancing of the harms, Plaintiffs have not shown that they will suffer hardship if enjoined. Nearly all of their arguments depend on their incorrect interpretation of the LPAs, *see* Opp. Br. at 20; an injunction ordering them to stop controlling the Funds would not affect their purported entitlement to any fees; and they profess no desire to touch the disputed monies during litigation. In any event, under the federal law they invoke, Plaintiffs' claimed hardship is irrelevant where, as here, Defendants are substantially likely to prevail on the merits. *See* Opp. Br. at 13.

## IV.     THE PROPRIETY OF THE ADDITIONAL FEES IS NOT AN ARBITRAL ISSUE

Plaintiffs contend that the Arbitration should proceed apace because, they believe, the meaning of § 5.14 is arbitrable.  Opp. Br. at 11-12, 22.  Plaintiffs are clearly wrong.  As explained in detail in the Defendants' opening brief, Def. Br. at 14–15, the LPAs include an exceedingly broad dispute resolution clause mandating that all proceedings "in connection with or relating to [the LPA] or any matters described [t]herein … absolutely and irrevocably" must be brought in a *court* of competent jurisdiction.  LPAs § 16.11.  The interpretation of § 5.14 is a quintessential matter relating to the LPAs and must be decided by this Court. [8]   The LPAs' inclusion of an exceedingly narrow carve-out for a determination of "[c]ause"—*i.e.*, whether a breach of § 5.14, as construed by this court, was willful and material—does not change the analysis.  LPA III § 1.19; LPA III-A § 1.21.  Indeed, it is counterintuitive to argue that the exceedingly narrow exception to arbitrate the definition of "[c]ause" would swallow the agreed-upon standalone dispute resolution provision that any dispute must be handled by this Court.  This is highlighted by Plaintiffs' own assertion that if this Court rules that § 5.14 required Advisory Committee approval of the Additional Fees, Plaintiffs intend to seek damages in this Court on a *quantum meruit* basis.  Opp. Br. at 12.  Defendants unambiguously had the right to a judicial construction of § 5.14 before they removed LRGP, and they did not lose their right by removing LRGP for cause.  In Plaintiffs' view, the arbitration clause means one thing today, but if no-fault removal takes effect before the arbitrator rules, the clause will magically transform into a provision for this Court to construe.  That is not how contracts work.

---

[8] As noted above, Defendants and Proposed Intervenors (insofar as they are granted intervention) will soon join in asking this Court to determine, among other things, the scope and meaning of § 5.14 when they file their Answer and Counterclaims relating to the propriety of the Additional Fees.

Thus, this Court should stay the arbitration so that it can make a judicial determination of the meaning of § 5.14.  Not only is such a determination mandated by the LPAs, it will likely moot any remaining issues in the Arbitration and would conserve the parties' time and resources.[9]

## V.    PLAINTIFFS HAVE NOT DEMONSTRATED THAT A BOND IS WARRANTED

Lastly, in requesting a substantial bond, Plaintiffs assert that they are owed $1.26 million in accrued and annual Management Fees and anticipate being owed substantial indemnification payments for its legal fees.  Opp. Br. at 24–25.  But Plaintiffs ignore and fail to address the most compelling reason why a bond is not warranted here:  Plaintiffs are in control of all of the Funds' monies from which the alleged Management Fees and indemnification payments, if valid, would be paid.  Because the requested injunctive relief here would enjoin the dissipation of the monies, Plaintiffs are simply at no risk of monetary damage, and the Court should deny Plaintiffs' request for a bond.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening memorandum, the Court should grant the Defendants' request for injunctive relief.

---

[9] Plaintiffs' contention that Defendants have waived their right to request a stay of the Arbitration is a red herring.  Opp. Br. at 23–24.  Defendants cannot be required to arbitrate whether § 5.14 is arbitrable because they did not clearly and unmistakably agree to do so.  *See* Def. Br. 16 n.7.  Indeed, they specifically contracted to bring any such claims in Court.  Contrary to Plaintiffs' suggestion, "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995); *see also id.* ("[I]nsofar as the Kaplans were forcefully objecting to the arbitrators deciding their dispute with First Options, one naturally would think that they did *not* want the arbitrators to have binding authority over them.").  Plaintiffs' cases are off point.  *See Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013) (litigant **conceded** authority of Railway Labor Act board to arbitrate); *In re the Arbitration Between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp. Grp.*, 491 F. Supp. 2d 413, 417 (S.D.N.Y. 2007) (litigant objected only *after* arbitration panel rendered decision).

Dated:  September 30, 2014
         New York, New York

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By:   */s/ James P. Chou*

    James P. Chou
    One Bryant Park
    New York, New York 10036
    Tel: (212) 872-1000
    Fax: (212) 872-1002

    Charles F. Connolly
    Aditya G. Nagarajan
    1333 New Hampshire Avenue N.W.
    Washington, DC 20036
    (202) 887-4000

    *Counsel for Defendants*

11